**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CYNTHIA A. SHIREY,

               Plaintiff,

vs.                                  Case No.  3:09-cv-312-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

    Cynthia A. Shirey ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits.  Her alleged inability to work was based on the impairments of spondylolisthesis, anterolisthesis, stenosis, herniated or bulging spinal discs, dysthemia, depression, and anxiety.  Transcript of Administrative Proceedings (Doc. No. 15; "Tr.") at 70, 295, 324-25; Memorandum in Support of Plaintiff's Position (Doc. No. 21; "Pl.'s Mem.") at 8-14.[2]  On September 12, 2000, Plaintiff filed a claim for disability insurance benefits, alleging an onset date of March 2, 2000.  Tr.

---

[1]  The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 12), and the Order of Reference was entered on June 9, 2009 (Doc. No. 14).

[2]  The Memorandum in Support of Plaintiff's Position (Doc. No. 19) was stricken on September 1, 2009 because it contained sensitive personal information in violation of the Court's Administrative Procedures for Electronic Filing in Criminal and Civil Cases.  See Order (Doc. No. 20).  On September 1, 2009, the Memorandum in Support of Plaintiff's Position was filed in properly redacted form.  See Pl.'s Mem. at 1. Citations to page numbers herein are to the page numbers generated by the Court's Electronic Case Filing system.

at 329; Pl.'s Mem. at 4; Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem.") at 2.   Plaintiff was insured for disability insurance benefits through December 31, 2003.  Tr. at 28.[3]

On May 29, 2003, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified.  Tr. at 499-536.  On July 23, 2003, the ALJ issued a Decision finding Plaintiff not disabled.  Tr. at 329-35.  On September 23, 2005, the Appeals Council granted Plaintiff's request for review.  Tr. at 342-45.  In relevant part, the Appeals Council determined the ALJ "did not have before her all of the claim file materials." Tr. at 342.  In addition, the Appeals Council found the record ambiguous as to whether Plaintiff's subjective complaints materially changed over time, stating that clarification from Plaintiff in this regard was necessary.  Tr. at 343.  The Appeals Council further indicated the ALJ "did not fully evaluate whether [Plaintiff]'s most recent job constituted past relevant work."  Tr. at 343.  The Appeals Council also decided that "updated medical evidence should be developed."  Tr. at 343.  The Appeals Council remanded the case to the ALJ with instructions consistent with its findings.  Tr. at 344.

On February 27, 2007, the ALJ convened a second hearing at which Plaintiff and a VE testified.  Tr. at 537-78.  On July 21, 2007, the ALJ issued a second Decision finding Plaintiff not disabled.  Tr. at 28-35.  On March 5, 2009, the Appeals Council denied Plaintiff's request for review, apparently concluding the ALJ had complied with the directions in the previous remand order.  Tr. at 7-9.  On April 6, 2009, Plaintiff commenced this action under

---

[3] Thus, the relevant time period for purposes of this appeal is March 2, 2000 through December 31, 2003.

42 U.S.C. §§ 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review the decisions of the Appeals Council and the ALJ.  Complaint at 1.  Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff raises two issues.  Plaintiff articulates the first issue as "whether or not the treating medical evidence was accurately reviewed and considered."  Pl.'s Mem. at 3, 15 (capitalization omitted).  Specifically as to the first issue, Plaintiff argues substantial evidence does not support the ALJ's reasons for discounting the opinion of Vickie A. Prince, M.D., a treating physician; and the ALJ failed to "comprehensively address the totality of" the opinion of M.W. Kilgore, M.D., another treating physician.  Id. at 15-18.  The second issue Plaintiff raises is "whether or not the vocational hypothetical comprehensively described the Plaintiff's status."  Id. at 3, 18 (capitalization omitted).  Specifically, Plaintiff argues the ALJ's hypothetical to the VE failed to include the functional limitations resulting from all of Plaintiff's impairments.  Id. at 18-19.  After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that additional explanation is needed before it can be determined whether substantial evidence supports the ALJ's decision with respect to the weight that was given to the opinions of Dr. Prince and Dr. Kilgore, and additional explanation from the ALJ is needed to determine whether the hypothetical to the VE adequately incorporated the functional limitations resulting from all of Plaintiff's impairments.  Accordingly, the Commissioner's final decision is due to be reversed and remanded.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  20 C.F.R. § 404.1520; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  In the most recent Decision, the ALJ followed the five-step sequential inquiry. Tr. at 28-35.  At step one, the ALJ observed that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of March 2, 2000 through her date last insured of December 31, 2003." Tr. at 29.  At step two, the ALJ found Plaintiff suffered from the following severe impairments: "spondylolisthesis with L4-5 and L5-S1 disc protrusions and a disc protrusion at C5-6." Tr. at 29.  The ALJ deemed Plaintiff's dysthymia "non-severe." Tr. at 29.  At step three, the ALJ ascertained Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 31.

The ALJ determined that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to lift ten pounds occasionally and less than ten pounds

---

[4]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

frequently.  Tr. at 31.  According to the ALJ, Plaintiff could sit for up to six hours in an eight-hour workday, and Plaintiff could stand/walk for up to two hours in an eight-hour workday; however, Plaintiff could "only sit or be on her feet for ½ hour maximum at a time."  Tr. at 31.  The ALJ indicated Plaintiff could "occasionally climb, balance, stoop, kneel, crouch, and crawl and is precluded from working at heights or on ladders or scaffolds."  Tr. at 31.  The ALJ did not identify any mental limitations in the RFC.  Tr. at 31.  At step four, the ALJ found that Plaintiff was unable to perform her past relevant work.  Tr. at 33.  Nevertheless, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed."  Tr. at 34.  The ALJ concluded that Plaintiff had not been under a disability from March 2, 2000 (the alleged onset date) through December 31, 2003, the date last insured.  Tr. at 35.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales,

402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

### A. Opinions of Treating Physicians

The first issue raised by Plaintiff is whether "the treating medical evidence was accurately reviewed and considered." Pl.'s Mem. at 15. In her argument on this issue, Plaintiff contends substantial evidence does not support the ALJ's reasons for discounting the opinion of treating physician Dr. Prince. Id. at 15-17. In addition, Plaintiff argues the ALJ failed "to comprehensively address the totality" of the medical opinion of Dr. Kilgore, Plaintiff's treating neurologist. Id. at 18. The undersigned first discusses the applicable law for assessing the opinions of treating physicians and then applies the law to the opinions of Dr. Prince and Dr. Kilgore.

### 1. Applicable Law

The Regulations instruct ALJs how to weigh the medical opinions[5] of treating physicians[6] properly. <u>See</u> 20 C.F.R. § 404.1527(d).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(d)(2).  When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician.  20 C.F.R. § 404.1527(d).

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence

_____

[5] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment.  20 C.F.R. § 404.1527(a)(2).

[6] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  <u>See</u> 20 C.F.R. § 404.1502.

supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor."  Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding no reversible error when "the ALJ articulated specific reasons for failing to give [a treating physician] controlling weight," and those reasons were supported by substantial evidence); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (explaining that, if an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it).

### 2.  Dr. Prince

Dr. Prince was Plaintiff's primary care physician beginning as early as October 1993. Tr. at 237; see also Pl.'s Mem. at 8 (setting forth the relevant medical history).  Dr. Prince saw Plaintiff in connection with Plaintiff's complaints of anxiety, depression, back pain, and other general medical issues.  Tr. at 214-38, 296-323; see also Pl.'s Mem. at 8-14.  On April 24, 2003, Dr. Prince completed an RFC form.  Tr. at 21.[7]  On the form, Dr. Prince indicated Plaintiff could lift and carry a maximum of ten pounds at a time, and Plaintiff could lift and carry less than ten pounds frequently.  Tr. at 19.  Dr. Prince opined Plaintiff could stay on her

---

[7]  There are three copies of this form in the record.  Tr. at 19-21, 293-95, 476-78.

feet less than one hour at a time; Plaintiff could stand and walk for one hour in an eight-hour workday; Plaintiff could sit for less than one hour at a time; Plaintiff could sit for three hours in an eight-hour workday; Plaintiff could alternate between sitting and standing for two hours in an eight-hour workday without having to lie down; and Plaintiff would need three hours of "bedrest" in an eight-hour workday.  Tr. at 19.  Dr. Prince indicated Plaintiff could occasionally bend and reach, but she could never squat, crawl, or climb.  Tr. at 20.  Dr. Prince stated Plaintiff was more limited on some days because she "gets flares which cause increased pain."  Tr. at 20.  Dr. Prince explained that MRIs of Plaintiff's spine show herniated discs in Plaintiff's neck and back, constituting objective evidence of a condition which could reasonably be expected to give rise to the degree of pain of which Plaintiff was complaining.  Tr. at 20.  Dr. Prince observed Plaintiff "h[eld] her back" and had an ataxic gait.  Tr. at 20.  Dr. Prince noted she had "watched [Plaintiff] without her knowledge [and] she struggles getting in [and] out of her car."  Tr. at 20.  According to Dr. Prince, Plaintiff had been functioning at this level since 1999.  Tr. at 21.

On April 30, 2003, Dr. Prince wrote a letter providing a narrative of Plaintiff's medical history.  Tr. 324-25.[8]  In the letter, Dr. Prince stated in relevant part as follows.  Dr. Prince explained that on October 2, 1998, Plaintiff was in a severe motor vehicle accident.  Tr. at 324; see also Tr. at 114-16.[9]  According to Dr. Prince, Plaintiff suffered a severe concussion with facial lacerations, as well as significant neck and back injuries.  Tr. at 324.  Plaintiff experienced "post concussive headaches for about six months following the accident."  Tr.

---

[8]  There are three copies of this letter in the record.  Tr. at 22-23, 324-25, 474-75.

[9]  On June 20, 2003, Plaintiff was in a second motor vehicle accident.  Tr. at 498.

at 324.  In forming the opinions expressed in the April 30, 2003 letter, Dr. Prince relied upon an MRI, which "revealed a herniated disc as well as spondylolisthesis at L[4-5]."  Tr. at 324. "Due to the severe nature of the accident and the resulting inability to work," Plaintiff "suffered with severe depression."  Tr. at 324.  Plaintiff also suffered "significant back pain with radiation to her legs posteriorly all the way to her heel."  Tr. at 324.  Dr. Prince opined Plaintiff was unable to lift or carry more than ten pounds, and she was unable to sit for any prolonged period, requiring her to "get up and walk around" every twenty to thirty minutes. Tr. at 324.  Dr. Prince explained that Plaintiff did "not usually lie down during the day, however if she were to try and work without shifting positions frequently and elevating her leg, she would need to lie down very often."  Tr. at 324.  Dr. Prince concluded Plaintiff was "completely and totally disabled, primarily secondary to her severe physical limitations and back pain, but also due to her depression and lack of occupational abilities."  Tr. at 325.

On June 29, 2006, Dr. Prince completed a Physical Residual Functional Capacity Questionnaire.[10]  Tr. at 473.[11]  Dr. Prince stated Plaintiff had been diagnosed with spondylolisthesis and disc protusion; her prognosis was "fair."  Tr. at 469.  According to Dr. Prince, Plaintiff had severe lumbar pain, and her condition was expected to last longer than twelve months.  Tr. at 469.  Dr. Prince opined Plaintiff had "significant anxiety and a poor education."  Tr. at 470.  Dr. Prince indicated Plaintiff suffered from anxiety, but not depression.  Tr. at 470.  Dr. Prince found Plaintiff's pain constantly interfered with Plaintiff's attention and concentration.  Tr. at 470.  Dr. Prince stated Plaintiff was capable of low stress

---

[10]  Plaintiff's date last insured was December 31, 2003.  Tr. at 28.  Although this letter is not within the relevant time period, for the sake of completeness it is reviewed.

[11]  There are two copies of this questionnaire in the record.  Tr. at 14-18, 469-73.

jobs "mentally but not physically," and "due to her pain level, her anxiety is even worse." Tr. at 470.  Dr. Prince estimated Plaintiff could walk less than one city block without rest or severe pain.  Tr. at 470.  Dr. Prince indicated Plaintiff could sit for twenty minutes at a time before needing to get up, and Plaintiff could stand for ten minutes at a time before needing to sit down or walk around.  Tr. at 470.  Dr. Prince opined Plaintiff could sit for less than two hours in an eight-hour workday, and Plaintiff could stand/walk less than two hours in an eight-hour workday.  Tr. at 471.  According to Dr. Prince, Plaintiff needed to walk for five minutes every thirty minutes.  Tr. at 471.  Dr. Prince predicted Plaintiff would need unscheduled ten- to thirty-minute breaks every thirty minutes.  Tr. at 471.  Dr. Prince also indicated Plaintiff's legs should not be elevated with prolonged sitting.  Tr. at 471.  In conclusion, Dr. Prince stated that Plaintiff was "in severe pain almost constantly."  Tr. at 472.

The ALJ gave "little weight" to the opinion of Dr. Prince.  Tr. at 31-32.  The ALJ articulated two reasons for discounting Dr. Prince's opinion: (1) her opinion was unsupported by "her own clinical findings"; and (2) her opinion was unsupported "by any significant period of treatment."  Tr. at 31-32.  These reasons are addressed in turn.

The ALJ's first reason for discounting the opinion of Dr. Prince is that Dr. Prince's opinion was "not supported by her own clinical findings."  Tr. at 31-32.  The ALJ described Dr. Prince's treatment notes as "sparse" and unsupportive of the "significant limitations" described by Dr. Prince.  Tr. at 32.  Upon review, the ALJ did not adequately explain her reasons for reaching this conclusion, and the reasons are not evident from a review of the record.  As the following examples demonstrate, Dr. Prince's treatment notes contain clinical findings that appear to be consistent with her medical opinion.  On August 7, 2001, Dr.

Prince observed "cervical muscle spasms." Tr. at 215.[12] On September 21, 2001, Dr. Prince

noted "herniated L5-5 disc[;] bulging L5-S1 disc[.]"  Tr. at 214.  Treatment notes from April

3, 2003 record Plaintiff's reports of pain and indicate "herniated lumbar disc L4-L5[;] bulging

L5-S1 disc[.]" Tr. at 297.  On June 24, 2003, Dr. Prince diagnosed Plaintiff with "Acute Cerv.,

thoracic, [&] lumbar strain, _hopefully_ soft tissue."  Tr. at 498 (emphasis in original).  In

treatment notes from a followup appointment on July 11, 2003,[13] Dr. Prince noted Plaintiff's

back had not improved, and Dr. Prince observed spasms and tenderness.  Tr. at 497.

Without further explanation from the ALJ, it is unclear how these treatment notes and clinical

findings fail to support Dr. Prince's medical opinion.

The ALJ's second reason for discounting the opinion of Dr. Prince is that Dr. Prince's

opinion was unsupported by "any significant period of treatment."  Tr. at 31-32.  The ALJ

stated that Dr. Prince's "medical records . . . reveal minimal treatment in 2001, no treatment

in 2002 and minimal treatment in 2003 until the claimant returned on 2 occasions in April

2003 seeking a letter for her disability claim[.]"  Tr. at 31.  Two aspects of this reason are

problematic.  First, the ALJ recognized that Dr. Prince was a treating physician and "treated

[Plaintiff] on a regular basis in years prior to [Plaintiff]'s alleged onset of disability[.]" Tr. at 31.

A review of the record reveals that, from March 2, 2000 (the alleged onset date) through

December 31, 2003 (the date last insured), Dr. Prince saw Plaintiff on six occasions.  Tr. at

296-99, 496-97.  Although the ALJ correctly observed that there were gaps in treatment

during the relevant time period, it is unclear why these gaps in treatment would undermine

_____

[12] This record is duplicated.  Tr. at 299.

[13] Plaintiff states these treatment notes are from January 11, 2003.  Pl.'s Mem. at 15.  However, the
notes appear to be dated July 11, 2003.  Tr. at 497.

Dr. Prince's opinion.   Without further explanation from the ALJ, the gaps in treatment–standing alone–would not appear to be an adequate reason constituting good cause for discounting the opinion of Dr. Prince under the circumstances.

Secondly, and more importantly, Plaintiff provided an explanation for not seeking treatment more often.  The ALJ questioned Plaintiff during the second hearing as to why Plaintiff did not seek medical treatment with more frequency during the relevant time period.  Tr. at 560.  Plaintiff responded that she "didn't have the money to go . . . back and forth to the doctor."  Tr. at 560.  In her Decision, the ALJ did not address Plaintiff's explanation.  Tr. at 31-32.  The United States Court of Appeals for the Eleventh Circuit has held that "a claimant's inability to afford a prescribed medical treatment excuses noncompliance." Dawkins v. Bowen, 848 F.2d 1211, 1212-13 (11th Cir. 1988) (citing Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (stating that "[a] claimant may not be penalized for failing to seek treatment she cannot afford; [i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him") (internal quotation and citation omitted)).  It is recognized that the "[l]ength of treatment and frequency of examination" is a relevant factor in determining the weight to be given to the medical opinion of a treating physician, see 20 C.F.R. § 404.1527(d)(2)(i); however, additional explanation from the ALJ is necessary in light of Plaintiff's reason for not seeking medical treatment more frequently.

Although it is unclear whether it is an additional reason for discounting the opinion of Dr. Prince, the ALJ also found Dr. Kilgore to be "much better qualified [than Dr. Prince] to render an opinion regarding [Plaintiff]'s status given his position as a neurologist."  Tr. at 32.

"Generally, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas of expertise more weight than non-specialists."  Mills v. Astrue, 226 F.App'x 926, 930 (11th Cir. 2007) (unpublished) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and (5)).  Nevertheless, "the opinion of a treating physician 'must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" Id. (quoting Phillips, 357 F.3d at 1240).  For the reasons explained infra pp. 17-18, it is unclear whether the ALJ discounted Dr. Prince's opinion on the basis of inconsistency with the opinion of Dr. Kilgore or for other reasons.  The ALJ did not explicitly find Dr. Prince's opinion to be inconsistent with the opinion of Dr. Kilgore, an omission which is compounded by the ALJ's failure to state with particularity the amount of weight that was given to the opinion of Dr. Kilgore.  See infra pp. 17-18; Tr. at 31-32.  Without additional explanation, it is unclear whether the ALJ's reasons amount to good cause for discounting the medical opinion of Dr. Prince.  As the lack of clarity frustrates judicial review, remand for additional explanation by the ALJ is appropriate.[14]

### 3.  Dr. Kilgore

Dr. Kilgore provided a majority of the treatment for Plaintiff's complaints of back pain after the October 2, 1998 motor vehicle accident, Tr. 139-85,[15] as well as after the second motor vehicle accident that occurred on June 20, 2003.  Tr. at 451-68.  On August 29, 1999,

---

[14]  The ALJ also stated that "[t]he extent of limitation alleged by [Plaintiff] is simply not supported by the weight of the objective medical evidence, particularly the documentary evidence provided by Drs. Kilgore and Kalam."  Tr. at 31.  The ALJ did not identify this as a reason for discounting Dr. Prince's medical opinion.  Because the ALJ's reasons are unclear, it cannot be determined whether substantial evidence supports the ALJ's decision to discount Dr. Prince's medical opinion without reweighing the evidence, which this Court cannot do under the applicable standard of review.  See Cornelius, 936 F.2d at 1145.

[15]  There are duplicates of some of these records.  Tr. at 287-92.

Dr. Kilgore wrote a narrative letter describing Plaintiff's treatment history.  Tr. at 152-55.  In the August 29, 1999 letter, Dr. Kilgore stated as follows.  Dr. Kilgore began treating Plaintiff at the end of March 1999, after the October 2, 1998 motor vehicle accident.  Tr. at 152.  At that time, Plaintiff was experiencing headaches and "recurring mid scapular back pains, which occurred episodically."  Tr. at 152-53.  Plaintiff's "major area of difficulty [was] low back pain with radiating symptoms into the right lower extremity."  Tr. at 154.  A CAT scan revealed "a left sided disc rupture at L4-5 and a lumbosacral pars defect with an anterior Grade I spondylolisthesis with bilateral foraminal compromise, left greater than right."  Tr. at 154.  By August 2, 1999, Plaintiff "needed to return to work, despite her symptoms, and was allowed to work, but with restrictions including avoidance of bending, stooping and lifting more than 25-35 pounds."  Tr. at 154.  Dr. Kilgore concluded:

> [Plaintiff] has suffered permanent injuries attributable directly to the accident of October 2, 1998.  This includes chronic post traumatic cervical, dorsal and lumbosacral sprain/strain.  It includes ruptured L4-5 disc, spondylolisthesis and spondylolysis.
>
> Utilizing the AMA Guides, Fourth Edition, her Permanent Partial Impairment rating equate[s] to 16% of total body function.

Tr. at 154.

Plaintiff returned to Dr. Kilgore for treatment after the June 20, 2003 motor vehicle accident.  Tr. at 462-64.  Although there was no emergency room visit after the second accident, Plaintiff complained of worsening pain during the subsequent months.  Tr. at 462.  After treatment, on April 12, 2004, Dr. Kilgore wrote a second narrative letter describing Plaintiff's history and condition:

[Plaintiff's] pain level prevented her from being able to work since 1998.  Her pain in the low back is now severely exacerbated, since the current automobile accident.  She had no pre-accident symptoms in her neck or upper back.

. . . .

Diagnostically, [Plaintiff] suffered a cervical, dorsal and lumbosacral strain/sprain, with exacerbation of pre-existent low back pain.

. . . .

[Plaintiff] returned November 4, 2003 and was seen for final examination December 23, 2003.  She had continuing neck and back pain complaints, and had not returned to work, having suffered a pre-existent injury to her lower back which had been exacerbated by her current collision.  Back pain persisted in the mid and lower back areas.  She had chronic right leg radiating symptoms.  She did not pursue recommendations for nerve conduction/EMG studies to assess radiculopathy.

Physical examination showed limited mobility.  MRI was reviewed and showed spondylolisthesis with L4-5 and L5-S1 disc protrusions.  Pain management and neurosurgical evaluation were recommended. [Plaintiff] was felt to be at Maximum Medical Improvement from a neurologic prospective December 23, 2003 and released to return on an as needed basis.  She was kept off work because of chronic pain complaints.

[Plaintiff] suffered permanent exacerbations of the low back condition which pre-existed her automobile accident and also suffered injuries to her neck and mid-back areas.  Utilizing the AMA Guides, 5th Edition, she has a Permanent Impairment Rating of 15% of the whole person.

She will have problems with bending and stooping, should avoid overhead work requiring prolonged neck extension, avoid repetitive pushing and pulling with the upper extremities and limit lifting to 10-15 pounds, or less.  She would benefit from pain medicines, muscle relaxants, anti-inflammatory drugs, and palliative therapy.

Tr. at 451-54.

Dr. Kilgore's April 12, 2004 letter is somewhat ambiguous.  While Dr. Kilgore stated Plaintiff's "pain level prevented her from being able to work since 1998,"[16] and she "was kept off work because of chronic pain complaints,"[17] he also stated that "[s]he will have problems with bending and stooping, should avoid overhead work requiring prolonged neck extension, avoid repetitive pushing and pulling with the upper extremities and limit lifting to 10-15 pounds, or less,"[18] which suggests Plaintiff was able to perform at least some physical work activity.  This ambiguity is exacerbated by the last two treatment notes from Dr. Kilgore, dated November 4, 2003 and December 23, 2003, respectively, which indicate "no work." Tr. at 479-81.[19]  The ALJ did not resolve this ambiguity or explain why Dr. Kilgore's letter demonstrated Plaintiff was able to work despite the statements in the letter that she had been unable to work.  Additional explanation is needed.  On remand, the ALJ should explain the import of Dr. Kilgore's finding of "maximum medical improvement" and the "Permanent Impairment Rating of 15% of the whole person."  Tr. at 453.

Moreover, the ALJ did not state with particularity the amount of weight that was given to Dr. Kilgore's opinion.  The ALJ merely stated that she "has given weight to [Dr. Kilgore's] opinion in conjunction with the State agency opinions."  Tr. at 31.  It is unclear from this statement <u>how much</u> weight was given to Dr. Kilgore's medical opinion.  The failure to state with particularity the amount of weight given to Dr. Kilgore's opinion adds to the difficulty in

---

[16]  Tr. at 451.

[17]  Tr. at 453.

[18]  Tr. at 453.

[19]  The treatment notes from December 23, 2003 also indicate "[Plaintiff] states she cannot work."  Tr. at 479.

understanding whether Dr. Kilgore's opinion served as a basis for discounting Dr. Prince's opinion. Remand is necessary for the ALJ to "state with particularity the weight [s]he gave the different medical opinions and the reasons therefor." Sharfarz, 825 F.2d at 279-80.

As the ALJ pointed out, Dr. Kilgore is a neurologist and therefore appears to be a specialist. Tr. at 32; see 20 C.F.R. § 404.1527(d)(5) (stating that the Commissioner "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Although the specialization of a physician is a factor to be considered, there are other factors, such as the nature and extent of the treatment relationship, the supportability of the opinion, and the opinion's consistency with the other evidence,[20] which the ALJ did not adequately address. Given the ambiguity of Dr. Kilgore's April 12, 2004 letter, as well as the ALJ's failure to articulate with particularity the weight that was given to the opinions expressed in that letter, additional explanation is needed.

For the foregoing reasons, the undersigned finds the ALJ did not clearly articulate adequate reasons supported by substantial evidence for discounting the opinion of Dr. Prince. In addition, the amount of weight given to the medical opinion of Dr. Kilgore is unclear. Without additional explanation, it cannot be determined whether substantial evidence supports the ALJ's decision to discount Dr. Prince's medical opinion. Therefore, remand is appropriate.

---

[20] See 20 C.F.R. § 404.1527(d).

**B. Hypothetical to VE**

With respect to the second issue, Plaintiff contends the ALJ failed to include in the hypothetical to the VE all of the mental and physical limitations resulting from Plaintiff's impairments. Plaintiff "asserts that the burden of all severe[21] impairments, such as her re-occurring depression (acute distress), her post-concussion syndrome with psychological factors, her visual inattention, her documented complaints of pain related to permanent spinal (lumbar and cervical) injuries and prescription side effects contribute to an inability to sustain work related activities on 'regular and continuing basis' . . . ." Pl.'s Mem. at 18-19. In other words, Plaintiff argues "[t]he ALJ must pose a hypothetical question to the vocational expert which comprehensively describes the claimant's impairments." Pl.'s Mem. at 19 (citing Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985)).

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). The hypothetical to the VE is typically based on the ALJ's RFC determination. In determining a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Hickler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985)

---

[21] The ALJ found Plaintiff's dysthemia to be "non-severe," Tr. at 29, and Plaintiff does not challenge this finding.

(stating that, "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citation omitted).

Here, the ALJ's hypothetical to the VE did not include any mental limitations.  Tr. at 566-71.  Thus, the ALJ implicitly found that Plaintiff's impairments resulted in no mental limitations.  It is not possible to determine whether this finding is supported by substantial evidence because the ALJ did not explain the reasons for this finding or adequately address the evidence regarding Plaintiff's mental impairments.  In particular, the ALJ did not discuss a May 1999 Clinical Neuropsychological Evaluation Report by Russell Addeo, Ph.D.[22]  Tr. at 239-44.  Dr. Addeo examined Plaintiff at the request of Dr. Kilgore.  Tr. at 176.  Dr. Addeo found Plaintiff to be "moderately to severely depressed," and "acutely distressed."  Tr. at 243.  According to Dr. Addeo, Plaintiff "appear[ed] to have a protracted post-concussion syndrome with primary psychological factors."  Tr. at 243.  Dr. Addeo explained that "Post Concussion Syndrome is composed of significant somatic, affective, and cognitive symptoms."  Tr. at 243.  Dr. Addeo opined Plaintiff's "psychological distress is likely to be a significant limiting factor for her successful return to work."  Tr. at 243.

Although the ALJ made a passing reference to Dr. Addeo's Clinical Neuropsychological Evaluation Report, Tr. at 29-30, the ALJ did not address the apparent protracted post-concussion syndrome or Dr. Addeo's opinion that psychological distress is likely to be a significant limiting factor in Plaintiff returning to work.  The ALJ provided no explanation at all as to how Dr. Addeo's opinion affected the RFC or the hypothetical to the

---

[22]  Dr. Addeo a licensed psychologist.  Tr. at 244.

VE.[23]  The lack of explanation is problematic because the ALJ based her findings regarding Plaintiff's mental limitations on the opinion of a non-examining state agency psychological expert while essentially ignoring the opinion of Dr. Addeo, who examined Plaintiff at the request of a treating physician.  See Mills, 226 F. App'x at 930 (stating that "[g]enerally, the opinions of examining physicians are given more weight than non-examining [physicians] . . .").

Nor can support for the ALJ's hypothetical to the VE be found in the ALJ's analysis at the other steps of the sequential evaluation process.  Although the ALJ applied the Psychiatric Review Technique[24] to find that Plaintiff's dysthymia resulted in "no restricion of daily activities, no difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace," there was no explanation as to the evidence on which these findings were based, other than reference to the opinion of the state agency psychological expert.  Tr. at 30-31.  In short, the lack of explanation throughout the Decision makes it impossible to determine whether the ALJ's hypothetical to the VE contained all of the limitations resulting from Plaintiff's impairments, especially because Dr.

---

[23]  Although Dr. Addeo's Clinical Neuropsychological Evaluation Report is dated May 17, 1999 or May 14, 1999, Tr. at 244, which is outside the relevant time period, it appears the Clinical Neuropsychological Evaluation Report would still have an evidentiary bearing on Plaintiff's condition during the relevant time period (March 2, 2000 through December 31, 2003).  This is because, in Dr. Prince's April 20, 2003 letter, she opined Plaintiff's depression resulted in mental limitations. Tr. at 325.  Thus, Plaintiff's depression may have lasted from the time of Dr. Addeo's May 1999 Clinical Neuropsychological Evaluation Report through the time of Dr. Prince's April 20, 2003 letter, which would include the relevant time period.  On remand, the ALJ should address the impact of Dr. Addeo's opinion on the RFC and hypothetical to the VE.

[24]  The Psychiatric Review Technique is embodied by the Psychiatric Review Technique Form and is further described in the introduction to section 12.00 of the listing of impairments.  See 20 C.F.R. §§ 404.1520a and 416.920a.

Addeo's Clinical Neuropsychological Evaluation Report may arguably contradict the ALJ's findings, and it was not adequately addressed by the ALJ.  Tr. at 239-44.

Under the circumstances, additional explanation is necessary before it can be determined whether substantial evidence supports the ALJ's determination that Plaintiff's alleged mental impairments did not result in any functional limitations that should have been included in the hypothetical to the VE.  Therefore, remand is appropriate.  On remand, the ALJ should address Dr. Addeo's Clinical Neuropsychological Evaluation Report, as well as the other evidence regarding Plaintiff's mental impairments.

## V.  Conclusion

Additional explanation from the ALJ is needed to determine whether the ALJ's reasons for discounting the opinion of Dr. Prince are supported by substantial evidence.  In addition, the weight given to the opinion of Dr. Kilgore was not articulated with particularity. Furthermore, additional explanation from the ALJ is needed to determine whether substantial evidence supports the ALJ's implicit determination that Plaintiff's alleged mental impairments resulted in no limitations that should have been included in the hypothetical to the VE.  In accordance with the foregoing, it is

**ORDERED:**

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions:

(A)    Reevaluate the evidence with respect to the opinion of and records from Dr. Prince, explicitly stating what weight her opinion is given.  If the ALJ

-22-

decides to discount Dr. Prince's opinion, adequate reasons supported by substantial evidence showing good cause should be clearly articulated.

(B)     Reevaluate the evidence with respect to the opinion of and records from Dr. Kilgore, explicitly stating what weight his opinion is given.  If the ALJ decides to discount Dr. Kilgore's opinion, adequate reasons supported by substantial evidence showing good cause should be clearly articulated.

(C)     Reevaluate all of the evidence regarding Plaintiff's alleged mental impairments and articulate findings pursuant to the Psychiatric Review Technique, including the evidentiary basis for these findings and whether Plaintiff's alleged mental impairments result in any functional limitations that should be included in the RFC.

2.     The Clerk is directed to close the file.

3.     If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on August 11, 2010.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

-23-

jdf
Copies to:
Counsel of Record